## HORACE P. STORER *versus* ELLIOT FIRE INSURANCE CO.

A policy of insurance was obtained, not from the defendants, upon a stock of goods and merchandize contained in a certain building designated in the policy. Subsequently, another policy of insurance was obtained of the defendants, upon a stock of merchandize "in the chambers" of the same building. The goods *in the chambers* were destroyed by fire. In an action upon the latter policy, *it was held* —

That there was a latent ambiguity in the policies, in regard to the merchandize intended by the parties to be embraced therein, properly explainable by parol testimony; and —

That, it being proved the goods in the chambers were not intended to be included in the first policy, the defendants were liable for the whole loss.

THIS is an action upon a policy of insurance on "a stock of merchandize contained *in the chambers* of a four story brick and slated building" on Middle street, in the city of Portland. The policy was dated, April 30, 1856, and contained these stipulations, among others, — "Other insurance permitted without notice, until requested."

"And it is further agreed, that in case there should be any other insurance, made as aforesaid, on the property hereby assured, whether prior or subsequent, the assured shall be entitled to recover, on this policy, no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon."

It appeared in evidence, that the plaintiff had a policy of insurance from the Howard Fire Ins. Co., dated Sept. 25, 1854; another from the Springfield Co., dated Sept. 13, 1853; and another from the Hampden Ins. Co., dated Nov. 6th, 1854. These policies had been renewed so that they were all in force at the time of the fire, June 24th, 1856. The description was substantially the same in all of them, being "a stock of dry goods contained in a four story brick store," referring to the same building described in the policy in suit.

By the first three policies, the goods of the plaintiff "in the building," were insured. By the last policy, being the one in suit, the goods "*in the chambers* of the building," were insured. The loss upon the goods in the chambers was $4488,67. And the defendants contended that these goods, though in the chambers, were necessarily "in the building," and were embraced in the other policies. If this were so, the defendants were not liable for the *whole loss*, but for their proportion, only, with the other companies.

Hereupon the plaintiff introduced evidence, subject to the objection of the defendants, that, at the time when he procured the first three policies, he did not occupy the chambers, and had no goods there; that the agents of the companies examined his stock, as it then was situated, in the lower stories of the building; and that it was then understood by him and them, that the policies covered such goods, only, as he should keep in the portions of the building then occupied by him.

It also appeared that the same person from whom, as agent, the plaintiff procured the policy in suit, was also, at that time, agent for the other companies, and knew of the other insurance.

At the hearing, before DAVIS, J., after the evidence was all in, the case was withdrawn from the jury, by the agreement of the parties, and submitted on REPORT, to the determination of the full Court.

The case was argued by *Fessenden & Butler*, for the plaintiff: —

The construction which the defendants would put upon these three policies, introduced by them, is, that they cover, by their very terms, goods *in the whole or any part of the "building or store."*

Looking at the face of these policies alone, without reference to any extrinsic evidence, it is sufficient to say, that their language will not bear such a construction. They simply describe the property as contained in a certain building, leaving it to be ascertained *aliunde* what the character of that building was, and in what part of it, (if a part,) the property insured was contained, and, in short, leaving all facts and circumstances to be ascertained by extrinsic evidence, which are necessary to apply these contracts to their subject matter.

In this view, the parol testimony introduced by the plaintiff in the case becomes not only admissible, but necessary and indispensable to the ascertaining of the intention of the parties, and the right construction of these policies.

It is well settled that parol evidence is admissible under such circumstances.

It is always permitted to show by parol evidence the situation and relation of the parties to a written instrument, under what circumstances it was made, to ascertain the subject and apply the words of the instrument to it, especially, as in the case at bar, where the terms are general. 1 Greenl. Ev. §§ 282, 286, 288; *Knight* v. *N. E. Worsted Co.*, 2 Cush. 271, 283, *per* SHAW, C. J.; *Philbrook* v. *N. E. Mut. Fire Ins. Co.*, 37 Maine, 137; *Per* TENNEY, C. J., quoting language of WHITMAN, C. J., (in *Cummings* v. *Dennett*, 26 Maine, 397,) with approval; *Cushman* v. *North Western Ins. Co.*, 34 Maine, 487; *Stacey* v. *Franklin Ins. Co.*, 2 Watts & Sarg't. 506, 546.

The attention of the Court is called particularly to the last of the above cases, not only upon the point to which it is cited, but as covering the whole ground of the case at bar.

The admissibility of this testimony comes under the well settled rule of law, "that if the contract be intelligible, and

the evidence shows an uncertainty, *not in the contract,* but in *its subject matter,* or its *application,* other evidence which will remove the uncertainty is admissible. Parsons on Contracts, vol. 2, p. 72, and cases cited in note U.

The parol testimony, sought to be introduced, would not vary or contradict the policy in suit. It would add nothing to or subtract nothing from what is written, nor change it in the least. It shows the property insured *was contained* in *the building,* agreeing with the description in the policy; and further identifies it and points it out.

While policies of insurance are governed by the general rule, that they cannot be varied. or contradicted by parol evidence,. yet, it may be safely said that their subject matter, like many other mercantile contracts, makes it necessary to go out of the written instrument, in order to interpret it, more frequently than in most contracts.

Policies are to be construed liberally, according to the intention of. the parties, for the indemnity of the insured, and the advancement of trade. 1 Burr. 345 ; 2 Rain. 373.

*Shepley & Dana* argued for the defendants : —

The other policies covered all the merchandize belonging to the plaintiff in the whole building. Such is the literal reading of them. There is no ambiguity in the description ; and parol testimony, to prove that such was not the contract of the parties, was inadmissible.

The defendants are, therefore, liable for their proportion of the loss, only, with the other companies.

The rule of construction, in case of double insurance, will be found in *Lucas* v. *Jefferson Ins. Co.,* 6 Cowen, 635.

The same person being agent for all the companies, they are presumed to have had notice of this insurance. *Sexton* v. *Montgomery Ins. Co.,* 9 Barb. 191 ; Angell on Life and Fire Ins. § 91.

The opinion of the Court was drawn up by

GOODENOW, J. — This is an action on an insurance policy, dated April 30, 1856. The writ bears date Dec. 17, 1856.

It was admitted that the fire took place June 24, 1856, and that the plaintiff sustained a loss thereby, to the amount of $4488,67, which sum, with interest thereon from July 26, 1856, the plaintiff is entitled to recover of defendants, if he is entitled to recover his *whole loss from them*, without contribution from other insurance companies.

The defendants offered, subject to objection, a policy of Howard Fire Insurance Company, dated Sept. 25, 1854; a policy of Springfield Fire and Marine Insurance Company, dated Sept. 13, 1853; and a policy of Hamden Insurance Company, dated Nov. 6, 1854, to the plaintiff; and also the application on which the policy in the office of the Springfield company was founded; and the application, dated April 28, 1856, on which the policy in suit was founded. It was admitted that these policies were renewed yearly, until the fire. The plaintiff was insured under defendants' policy, " $5000, on his stock of merchandize contained in the chambers of a four story brick and slated building, occupied by him and others, situate on the northerly side of Middle street, and extending through to Temple street, in Portland, Maine, as per application and plan, No. 6147, on file at this office, forming part of this policy and warranty on the part of the assured."

The policy further provided that, " other insurance (should be) permitted without notice, until requested." And " that, in case there should be any other insurance made as aforesaid, on the property hereby assured, whether prior or subsequent, the assured shall be entitled to recover on this policy no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon."

The plaintiff was insured in the Howard Fire Insurance Company, $2000, " on his stock of dry goods and fixtures of store, contained in a four story brick store, situate on Middle street in said Portland."

He was also insured in the Hamden Fire Insurance Company, $2000, on his stock of merchandize, composed principally of dry goods and ready made clothing, contained in a

four story brick building on the northerly side of Middle street."

Also, in the Springfield Fire and Marine Insurance Company, "$5000, on his stock of dry goods and fixtures contained in a four story brick store, situate on Middle street and on Temple street, and being numbered 125, Mussey's Row, so called, as described in a survey, No. 143, on file in this office," which is a part of the policy.

The application states the insured property to be "in a four story brick store, slate roof, situated on Middle street, in Portland."

The plaintiff, being called by his counsel, testified that, at the times said three policies, in the Springfield, Howard and Hamden offices, were issued, he occupied part of a building known as the "Mussey block," on the north-westerly side of Middle street, in Portland; that L. D. Hanson & Co.'s store formed a part of said block; that their store was separated from the other part by a brick wall, from bottom to top, and that they occupied from cellar to attic, said store being arranged to be so occupied, with stairs inside communicating with the different stories, and there was no access to the chambers excepting through the room in the lower floor. This store was No. 19, on Middle street. The other part of said block was finished for two stores, on the ground floor, with basements under them, and the chambers over them were occupied as lawyers' offices, and for other purposes. After going into a more minute description, he states that his store consisted of the ground floor, and basement under it. It had no connection with any other part of the building. It was known as No. 125. The chambers were numbered 123. At the times the insurance was effected in the Springfield, Howard and Hamden offices, he had no right in any other part of the building. The chambers were then occupied by other parties. That, in 1855, he went into the wholesale business, having been previously engaged in the retail trade; that, at different times during the year 1855, he hired these chambers in the building, two, at first, on the second floor, then the room

in the third story — there was no connection between these chambers; they were hired at different times, and at different rents. The chamber in the third story was used as a store-room for whole bales and packages of goods; there was no way of passing from his store to either of said chambers, without going into the street.

The plaintiff also testified, that the agents of the Hamden and Howard offices, and of the Springfield office, when they took the risks, examined the premises, and he pointed out to them the portion of the building occupied by him as his store, and wherein he wished insurance, and the premium was fixed upon such examination; that he did not have any intention of change of business, or of hiring these chambers at the time insurance was effected in these offices. After he had hired the three chambers, he applied to the agent of the three offices, before named, and obtained a separate insurance in the defendant company, of which the same person was also agent, and that he charged a higher premium, the risk being greater.

The third story chamber, where the goods were lost, was next to Temple street, which was narrow, and opposite were wooden buildings, and just above was a livery stable from which the fire took; that he hired this chamber after the last renewal of the other policies. At the time of the fire, the stock in the store No. 125, that is, the lower floor and basement, was between $25,000 and $30,000, and the loss there amounted to about $2,500.

It is contended, on the part of the defendants, that the three first policies, as well as the policy of the Elliot Company, covered the stock of the plaintiff in the chambers of the four story brick store, the only distinction being that the policy of the Elliot Company covered that in the chambers *alone*, while the other policies covered whatever he had in either or all the four stories. And, also, that there was no ambiguity in the descriptions in the policies.

Did the three policies, or either of them, introduced by the defendants, cover the merchandize in the chambers? If they

did not, it will become unnecessary to consider the second proposition of the defendants.

Taking into view the several descriptions contained in the four policies which have been introduced in evidence in this case, we find a latent ambiguity, which may be removed, and which, in our opinion, has been removed by parol testimony. The parol testimony introduced does not vary or contradict the language of the policy on which this suit is founded. It only goes to show where the property was to be found, to which the policy was intended to apply. The building, in which the goods were, may be found without the aid of parol testimony. But it is found to contain other occupants beside the plaintiff, with different entrances, and carrying on different kinds of business. Were the policies intended to apply to goods in the whole building? The parol testimony shows that the plaintiff occupied only a part of it, when the three first policies were issued. It shows the part he occupied when the last policy was issued, which was " on his stock of merchandize, contained in the chambers of a four story brick and slated building, occupied by him and others," &c.

We are of opinion that the parol testimony offered was admissible, and that the three first policies did not, nor did either of them, cover the merchandize in the chambers or any part of it; and that, therefore, the plaintiff is entitled to recover of the defendants for his *whole loss*, as before stated.

*Defendants defaulted. Damages, $4488,67,*
*and interest on the same from July 26, 1856.*

TENNEY, C. J., HATHAWAY, MAY, and DAVIS, J. J., concurred.